UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


BRUCE J. KENNEWAY, )
)
    *Plaintiff* )
)
v. ) Civil No. 09-119-B-W
)
MICHAEL J. ASTRUE, )
**Commissioner of Social Security,** )
)
    *Defendant* )


### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from a lower spine injury in 1985 and a neck injury in 1997, was capable as of his date last insured for SSD benefits, December 31, 2000, of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through December 31, 2000, Finding 1, Record at 18; that he had degenerative disc disease and associated pain, Finding 3, *id*.; that, during the time

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 18, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

in issue, he had the residual functional capacity ("RFC") to lift 10 pounds frequently and 20 pounds occasionally, to sit/stand/walk for six hours in an eight-hour day with alternate sitting/standing every 60 minutes to relieve discomfort, and to occasionally climb stairs and ramps, bend, crouch, and stoop, with a need to avoid constant push-pull usage of his left upper extremity, any left arm overhead reaching, and concentrated exposure to vibration and to hazards in the form of uneven surfaces for walking, Finding 5, *id*. at 20; that, considering his age (41 years old, defined as a younger individual, as of his alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 23; and that he therefore had not been under a disability at any time through the date of decision (October 19, 2006), Finding 11, *id*. at 24.[2] The Appeals Council declined to review the decision, *id*. at 5-8, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5

---

[2] The administrative law judge erred in so stating. As she indicated in the body of her decision, the question presented was whether the plaintiff had been disabled at any time from his alleged date of onset of disability, November 16, 1998, through his date last insured, December 31, 2000. *See* Record at 15-16.

(1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff, appearing *pro se*, sought to supplement the record with two documents from a later-filed, successful application for Supplemental Security Income ("SSI") benefits: a report of Disability Determination Services ("DDS") consulting examiner Edward J. Harshman, M.D., dated May 4, 2007, and the favorable decision issued with respect to that application by a different administrative law judge, Katherine Morgan, on January 24, 2008.  *See* Attachs. I-II to Statement of Errors/Fact Sheet ("Statement of Errors") (Docket No. 11).  Without objection from the commissioner, I ordered the record so supplemented during a teleconference with the parties held on September 2, 2009.  *See* Report of Conference of Counsel and Order (Docket No. 21). The plaintiff seeks reversal and remand on the strength of the supplemental records and on the basis of a contention that treating practitioners from EMMC Family Practice Center falsely stated, in progress notes of record, that he ran two to eight miles and lifted weights.  *See generally* Statement of Errors.  I find no error.

## I. Discussion

### A. Supportability of Step 5 Finding on Basis of Record as Supplemented

The plaintiff appeals the October 19, 2006, decision of Administrative Law Judge Patricia M. Gormley that, as of his date last insured of December 31, 2000, he retained the RFC to perform work existing in significant numbers in the national economy.  In so finding, the administrative law judge considered not only records filed or generated in connection with the plaintiff's March 16, 2005, application for SSD benefits but also records filed or generated in connection with an earlier, unsuccessful SSD application filed in November 1997.  *See* Record at

15, 18, 366, 410-517.[3] Those records, as a whole, provide substantial support of both her RFC and Step 5 findings.

The plaintiff alleged that he was disabled as the result of injuries sustained to his back in a 1984 tractor-trailer accident and to his neck in a 1997 workplace accident during which, while working as a parking control officer, he was struck by a car while riding on a motor scooter. *See id*. at 379-80, 384-85, 516-17.[4]

The administrative law judge adopted virtually all restrictions noted in the two RFC opinions of record by DDS nonexamining consultants, an April 28, 1998, opinion by Gary Weaver, M.D., and a June 3, 2005, opinion by Lawrence P. Johnson, M.D. *Compare* Finding 5, *id*. at 20 *with id*. at 508-15 (Weaver opinion), 187-94 (Johnson opinion). She also adopted an additional restriction noted by DDS examining consultant Steven Johnson, M.D., a need to alternate sitting and standing and change position frequently, *compare* Finding 5, *id*. at 20 *with id*. at 499, even though Dr. Johnson himself stated that "on exam [the plaintiff] has no orthopedic or neurological impairment demonstrated[,]" *id*. at 499, Dr. Weaver declined to adopt that specific limitation on the basis that it was unsupported by objective findings, *see id*. at 514, and Dr. Franklin Plotkin, a medical expert present at the plaintiff's hearing, testified that no objective medical evidence supported Dr. Steven Johnson's assessment of restrictions or, more generally,

---

[3] At hearing, the plaintiff amended his alleged date of onset of disability to November 16, 1998, the day after issuance of the unfavorable decision on his November 1997 application for SSD benefits. *See* Record at 15, 366-67.

[4] While the plaintiff does not challenge Administrative Law Judge Gormley's finding that he had no medically-determinable mental impairment of anxiety as of his date last insured, *see generally* Statement of Errors; *see also* Record at 18-19, he clarified at oral argument that he does contend that, as of his date last insured, he suffered pain sufficiently severe to affect his ability to think, concentrate, and stay on task. As counsel for the commissioner noted at oral argument, Administrative Law Judge Gormley took this claim into consideration. *See* Record at 21 ("the claimant described a slowdown in his thinking because of the pain to the point that he could not understand what somebody was saying or what he was reading"). She made allowance for pain in finding that the plaintiff needed to alternate sitting and standing every 60 minutes to relieve discomfort, *see* Finding 5, *id*. at 20, although she supportably found that he did not experience pain of the intensity alleged as of his date last insured given his reported activities and reported lesser pain levels at or about the relevant time as well as his sparse medical treatment then, *see id*. at 20-23.

the plaintiff's allegation of back- and neck-related disability as of his date last insured, *see id*. at 377; *see also id*. at 370-71.

A vocational expert present at the plaintiff's hearing testified that a person with those restrictions could perform the representative occupations of credit card control clerk, checker-1, and addresser. *See id*. at 400-03.

Nothing in Dr. Harshman's report of May 4, 2007, or Administrative Law Judge Morgan's favorable SSI decision of January 24, 2008, changes that result. While Dr. Harshman took into account the plaintiff's recitation of his past accident and work history, he based his finding of disability on the results of his examination of May 4, 2007, concluding:

> This man has lost over three inches in height and has an observed pattern of not sitting for very long. Unilateral paraspinal tautness is not possible voluntarily. Therefore, I believe that his back pain is genuine and disabling.
>
> . . . His irritable manner corroborates his complaint of pain. (My experience is that claimants who try to deceive me are careful to be polite.)
>
> Because of his record of trying multiple jobs, and the absence of ligh[t]-duty work that he can do while sitting and standing at will, I consider him unemployable.

*See* Attach. I to Statement of Errors at 2. Dr. Harshman did not purport to assess the plaintiff's condition as of December 31, 2000, his date last insured for purposes of SSD benefits. *See id*.[5] Administrative Law Judge Morgan also considered only whether the plaintiff had been disabled since February 1, 2007, his alleged onset date for purposes of his February 2007 application for

---

[5] Whereas entitlement to SSD benefits hinges in part on acquisition of insured status, entitlement to SSI benefits does not. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status. This is a social welfare program funded out of general taxpayer revenues. SSI is available even to those who qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status.").

SSI benefits. *See* Attach. II to Statement of Errors at [6]-[10]. She reviewed and discussed evidence dating from 2006 and 2007. *See id*. at [6]-[8].

The supplemental evidence hence does not alter the conclusion that Administrative Law Judge Gormley reached a supportable decision that the plaintiff retained the RFC, as of his date last insured, to perform work existing in significant numbers in the national economy.

### B. Treating Practitioners' Notes

The plaintiff next complains that treating practitioners at EMMC Family Practice Center falsely stated in progress notes that he ran from two to eight miles a day and lifted weights. *See* Statement of Errors at 2-3. Specifically, he asserts:

> On page 22 of the transcript, there is reference to running 8 miles. During my back treatments, I remember stating that I like the music o[f] the singer, EMINEM's, "8 Mile CD." There is also reference to 2 miles, which is also untrue. And I believe I stated that I had my wife's treadmill set at 1 or 2 out of 9, 9 for the fastest, and that I tried to walk on it for less than a minute but was too sore, and could only do stretching exercises.
>
> In the transcript, reference is made to me lifting weights. I did lift light weights back in 1986, after my spine injury in 1985, as part of my rehabilitation. And until my second injury, which was to my neck, in 1997, I have tried to get back into the job market. Since my neck injury in 1997, I have not lifted weights, and stretch for my exercise and limit my eating to try to stay healthy.

*Id*.

The record contains the following pertinent progress notes from EMMC Family Practice Center, commencing at about the plaintiff's date last insured:

1. A note of December 22, 2000, stating, "Injured back in 1984 in tractor trailer accident. Was on narc[otics], tens unit, epidural injections, now on no pain meds. He does experience[e] R[ight] sided lower back pain almost daily, but the pain is not significant enough to prevent him from his performing his daily activities[.]" Record at 120.

   2.   A note of May 30, 2001, stating: "[Patient] still having problems with low energy level since last visit.  He is full time student with a family.  He reports that he works out daily."  *Id*. at 128.

   3.   A note of February 3, 2004, stating: "cont[inues] to work – out heavily [with] weights – squats" and "cont[inues] to work out [with] heavy barbells – 55# 'flies[.]'"  *Id*. at 152.

   4.   A note of June 21, 2004, stating: "patient has a hist[o]ry of lumbar disk with [history] of enzyme injections, does well until he pushes himself[;] able to run 2 miles but when he runs 8 he [is in] pain the next day[.]"  *Id*. at 156.

   5.   A note of February 24, 2006, stating: "likes to lift weights to stay in shape."  *Id*. at 269.

   At the plaintiff's hearing, Dr. Plotkin stated, in the course of explaining that he found no objective evidence of a problem with the plaintiff's back, "It might be pointed out that Mr. Kenneway is a fitness enthusiast and does heavy weight lifting without any problem."  *Id*. at 370-71.  The plaintiff's representative challenged that characterization, stating: "Mr. Kenneway tells me that he stopped doing any weight lifting after his accident" and "maintains that the only thing he's doing is stretching exercises which had been recommended by his doctors."  *Id*. at 373.  The plaintiff subsequently testified that he had not lifted weights since 1986 or 1987.  *See id*. at 388.  He described progress notes indicating otherwise as untrue, explaining: "[W]e had discussed my injury and all and I said I used to body build and I weight lifted before the injury at Viking Freight.  But, I couldn't lift heavy weights if I wanted to.  I cannot do that."  *Id*.

   The administrative law judge stated: "Now in '04, the doctor indicated that you sometimes feel weak after exercise.  You do well until you push yourself and you can run two miles.  This was in June of '04."  *Id*.  The plaintiff responded: "No, I cannot run that distance and

7

then I couldn't run that distance. Not at all." *Id*. Asked why that might have been in the progress note, the plaintiff stated that he had "no idea[.]" *Id*. The administrative law judge asked: "And he said you ran 8 miles and you were in pain the next day?" *Id*. at 389. The plaintiff responded: "No, that's not true. I couldn't run that distance if I tried. I take short walks." *Id*. The administrative law judge then queried whether the plaintiff could run two or eight miles back in June 2004. *See id*. He responded that he did not remember doing such things then. *See id*. He admitted that he tried kick boxing in 2003, but stated that he stopped after two or three such workouts because of pain in his right rib. *See id*.

Administrative Law Judge Gormley took these inconsistencies between the medical records and the plaintiff's testimony into account but found that they cut against, rather than bolstered, his credibility. *See id*. at 21-22. She did so in the context of a thorough discussion that took into account other evidence of record tending to discredit the plaintiff's allegations of disabling symptomatology as of his date last insured, including the fact that, following his alleged onset of disability, he had no documented medical treatment until October 26, 2000, at which time his primary concern was warts on the ball of his left foot, that he reportedly stated during a December 2000 office visit that his almost daily back pain was not significant enough to prevent him from performing his daily activities, and that he reportedly stated during a May 2001 office visit that he worked out daily. *See id*. at 21, 118-20, 128.

The plaintiff now, in effect, seeks a second bite at the apple, offering new possible explanations for the asserted false statements in the EMMC Family Practice Center progress notes. *See* Statement of Errors at 2-3. His attempt comes too late. As the First Circuit has noted, 42 U.S.C. § 405(g) provides "statutory authority to remand for further proceedings where new evidence is presented after the ALJ decision if the evidence is material *and* good cause is

shown for the failure to present it on a timely basis." *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001) (emphasis in original). The plaintiff, who was represented at hearing by H. Benedict Obermann, an experienced paralegal for the law office of MacDonald, Chase & Dufour, *see* Record at 117, 363, availed himself of the opportunity at hearing to explain the asserted false statements in his treating sources' progress notes. The administrative law judge supportably chose not to credit his explanations. On appeal, he demonstrates no good cause for adducing new testimony, which should have been known to him at the time of his hearing, as to the reasons why the progress notes may have been false and/or inaccurate.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be *AFFIRMED*.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2009.

        /s/ John H. Rich III
        John H. Rich III
        United States Magistrate Judge